## 59425. WHEELER v. AIKEN.

McMURRAY, Presiding Judge.

Van Wheeler and Lindy W. Aiken (formerly Lindy Wheeler) were husband and wife until she obtained a divorce on September 6, 1977. Prior thereto they jointly owned and operated "The Learning Tree Two," a "day care center, private institution." The divorce did not provide for the division of the day care center, and Mrs. Aiken (formerly Wheeler) contends it was "always in my care" and was not provided for in the divorce as "it was just always understood" that Van Wheeler "was giving up his share of the operation of the Day Care Center." On September 9, 1978, Mrs. Aiken (formerly Wheeler) remarried.

Whereupon Van Wheeler, as plaintiff, sued Lindy W. Aiken, his former wife and alleged business partner or joint venturer, contending at the time of their divorce that they were still partners in the business known as "The Learning Tree 2." Wheeler contends that he gave his interest in and to the aforesaid business to the defendant "in trust, provisionally, and not as an outright gift or transfer of ownership," to "have the sole control, possession and use of the business, . . . until such time as she removed her personal residence and domicile . . ., or until such time as she remarry, whichever event first occurred." He further alleged that in the event she remarried "all right, title, interest and ownership in and to the business . . . was to revert solely to" him. He further alleges

that upon her remarriage defendant has refused to return the business back to him and he sought injunctive relief, a receivership and for the court to impose an implied trust upon the defendant for the benefit of the plaintiff. The defendant answered, admitting certain of the uncontroverted facts shown above, but generally denied the complaint, the existence of any alleged agreement and by separate defense alleged that if any such agreement existed "the same would be unenforceable in that it violates the Statute of Frauds," and further that it would be a "nudum pactum unsupported by any consideration from Plaintiff to Defendant."

The case proceeded to trial at which time the defendant, called for cross examination, admitted only the above uncontroverted facts, and the plaintiff contended in his testimony that as to the joint ownership of the business he had conveyed or transferred his interest to his former wife in order that she use the proceeds for the support of their minor children and "that she would operate the day care center until she remarried or moved away from the area, and at that time it would revert back to me," and that she took over the business with that understanding. He testified that after she remarried she has refused to give him the day care center even though she admitted "she knew that was our agreement but that she had changed her mind."

At the completion of plaintiff's case the defendant offered no testimony and also rested her case and moved for a directed verdict based upon the fact that there had been no consideration in support of the agreement and the alleged implied trust, if any, amounted to an oral express trust violative of the Statute of Frauds. After argument the trial court directed the verdict, and judgment was entered in favor of the defendant. Plaintiff appeals. *Held:*

1. The prayer for receivership and equitable relief such as injunction and specific performance of the contract are not involved in this review. We have for consideration only a review of a directed verdict and judgment in favor of the defendant based upon the evidence submitted in the case below. The Supreme Court having transferred the case to this court, we proceed to review it.

2. Plaintiff has offered testimony showing the transfer of an undivided ownership in the business and payments of certain debts thereon as to "The Learning Tree Two." While the business was operated by the defendant, who also owned an undivided interest therein, there was evidence submitted of consideration flowing to the defendant to authorize the contingency alleged by and between the parties (if there be any such agreement, which defendant denies) that the defendant would transfer the business to the plaintiff in the event of her remarriage. The business not involving

real property, and the plaintiff having alleged and shown an oral contract partly performed by the parties, if not fully performed except for the possible contingency, the Statute of Frauds would not control here demanding the contract to be in writing. See Code § 20-402; *Bryan v. The South-Western R. Co.,* 37 Ga. 26 (2), 31; *Tanner v. Campbell,* 182 Ga. 121, 122-123 (184 SE 705); *Kutash v. Gluckman,* 193 Ga. 805 (3), 810 (20 SE2d 128); *Langenback v. Mays,* 205 Ga. 706 (3), 711 (54 SE2d 401).

3. Plaintiff also testified to a beneficial interest involved in the contract which was performed in providing income for the use and benefit of their children. See *Ayer v. First Nat. Bank &c. Co.,* 182 Ga. 765, 767 (1) (187 SE 27).

4. To allow the defendant to repudiate the alleged agreement (if any) here would amount to fraud, and performance will be compelled in such cases. *Nellis & Co. v. Houser,* 33 Ga. App. 266, 267 (125 SE 790); *Dealers Discount &c. Co. v. Mitchell Motors, Inc.,* 101 Ga. App. 900 (4), 904 (115 SE2d 420).

5. While counsel for the parties in their arguments before this court have utilized such legal terminologies as implied, resulting and express trusts, we hold that the alleged oral contract or agreement involves the transfer of an undivided interest in personalty for consideration as to the support of the parties' minor children which contract was completely executed except for a bare contingency of possible reverter in the event of the occurrence of certain situations, one of which was the remarriage of the defendant which has occurred. Accordingly, the trial court erred in directing the verdict and judgment in favor of the defendant as there was evidence for jury determination. See *North Ga. Production Credit Assn. v. Vandergrift,* 239 Ga. 755, 761 (1) (238 SE2d 869); *Humble Oil &c. Co. v. Mitchell,* 230 Ga. 323, 326 (197 SE2d 126); *Murray v. Gamble,* 127 Ga. App. 855 (195 SE2d 461); *Talmadge v. Talmadge,* 241 Ga. 609 (2), 610 (247 SE2d 61).

6. Plaintiff's remaining enumeration of error complains of the trial court's refusal to allow in evidence the taped conversations between the plaintiff and the defendant. However, upon examination of the record we find that the plaintiff did not offer the original tapes in evidence but tapes prepared by a recording expert who had prepared a tape or tapes from the original tape or tapes, eliminating certain sounds, that is, reducing the background noise "to make the conversation more intelligent" and to make the conversation "more easily understood" since the conversation was "somewhat obscured by a lot of background noise and such." The testimony of the expert was that he had in effect prepared other tapes from the tapes brought to him by the plaintiff. Based upon

*Steve M. Solomon, Jr., Inc. v. Edgar,* 92 Ga. App. 207 (3), 211-212 (88 SE2d 167) and *Central of Ga. R. Co. v. Collins,* 232 Ga. 790, 793-796 (3) (209 SE2d 1), as to the admissibility of sound recordings in evidence, the trial court ruled out the tapes in that plaintiff failed to lay the proper foundation for the reproduction of a recording of a mechanical transcription device before the jury. The original tapes were not submitted in evidence but only the tapes edited by the expert were sought to be submitted to the jury. Based upon the above cases, the trial court did not err in refusing to allow the jury to hear the tapes where the proper foundation for same had not been laid.

*Judgment reversed. Smith and Banke, JJ., concur.*

SUBMITTED FEBRUARY 4, 1980 — DECIDED APRIL 8, 1980.

*Kran Riddle, George M. Hubbard,* for appellant.
*Robert E. Falligant, Jr.,* for appellee.